STATE of Missouri, Plaintiff–Respondent,

v.

Marcus Seaton WILKERSON, Defendant–Appellant.

Marcus Seaton WILKERSON, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 15771, 16320.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 16, 1990.

Rehearing Denied Sept. 7, 1990.

Craig A. Johnston, Columbia, for defendant-movant-appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

A jury found Marcus Seaton Wilkerson guilty of possession of methamphetamine, a controlled substance, in violation of § 195.240, RSMo 1986.[1] Wilkerson (defendant) was also found guilty of the unlawful use of a weapon in violation of § 571.030.1(1). The defendant's punishment was assessed at imprisonment for a term of five years for possession of methamphetamine and two years for the unlawful use of a weapon. It was ordered that defendant's sentences be served concurrently. Appeal No. 15771 is defendant's appeal from the judgments of conviction. The defendant timely filed a motion for postconviction relief pursuant to Rule 29.-15, and after a hearing the motion court denied relief. Appeal No. 16320 is defendant's appeal from the order denying relief on his postconviction motion. The two appeals have been consolidated but will be considered separately.

### Appeal No. 15771

The offenses of which defendant was convicted were committed during the evening—after dark—on August 30, 1987. Undercover officers were working "buy-busts" at a Ramada Inn in Newton County. The officers purchased an ounce of methamphetamine from one Anna O'Brien, and the circumstances of the sale led them to believe she had an accomplice nearby. Additional officers were summoned. The defendant was found in a pickup truck parked near the Ramada Inn. He was ordered to step out of the vehicle and he did so. One of the officers present conducted a "pat-down" search and discovered a large amount of cash—$3,500—on the defendant's person. The defendant was asked "where his gun was," and he replied, "it's just a .22, and it's in the truck."

The officers searched the pickup for a weapon. They discovered a "Crown Royal" bag underneath "the driver's side seat."[2] They also found a wicker handbag on the seat of the pickup, and when the handbag was opened the officers discovered a fully loaded .22 caliber pistol. Further search of the Crown Royal bag yielded several plastic bags. Chemical analysis revealed that some of the plastic bags contained methamphetamine; one contained cocaine. This prosecution followed.

On the direct appeal, the defendant has briefed seven assignments of error. His first point is that the trial court erred to his prejudice in permitting the State to amend the first count of the information to charge an offense distinct and different from that originally charged. An amendment operating to charge an offense different from that charged in the original information is not, of course, permissible. Rule 23.08; § 545.300; *State v. Gladies*, 456 S.W.2d 23, 25[4] (Mo.1970).

For whatever reason, the State amended the first count of its information three times. On September 11, 1987, the defendant was charged with possession of methamphetamine in violation of § 195.240, R.S.Mo. He had a preliminary hearing on this charge. On October 1, 1987, an information was filed charging defendant, in Count I, with "felony sale" of methamphetamine in violation of § 195.020. On April 5, 1988, the first count of the information was amended to charge that the defendant, "while acting in concert with Anna O'Brien" committed the offense of *possession* of methamphetamine, in violation of § *195.020.* On May 4, 1988, the first count was amended to read that:

> "the defendant, while acting in concert with Anna O'Brien, in violation of Section *195.240* RSMo, committed the felony of *possession* of methamphetamine, a controlled substance ... in that on or about the 30th day of August, 1987, in the County of Newton, State of Missouri, the defendant knowingly possessed a controlled substance, to-wit: methamphetamine, and ..."

---

**1.** References to statutes and rules are to RSMo 1986 and V.A.M.R., except where otherwise specifically noted.

**2.** There is a blended whiskey marketed under the name "Crown Royal." This whiskey is sold in a soft sack or bag. We assume the peace officers who testified were referring to such a sack.

■ Defendant's trial counsel objected to the last amendment on the ground that the fourth information represented the "first time" the defendant had been charged with acting in concert with another. As we have said, the defendant now argues that the third amended information charged him with an offense distinct and different from that with which he was originally charged.

The State explained the several amendments of the first count of the information by stating that the original complaint filed in the case charged the defendant with *possession* of methamphetamine; after defendant was bound over, an information was filed which mistakenly charged the defendant with the *sale* of methamphetamine. When the information was first amended to charge possession, the pleader inadvertently included, according to the prosecutor, a reference to the "wrong" statute. On the day of trial, the State asked for and was granted permission to amend the information so as to charge that the defendant "acted in concert" with Anna O'Brien to possess methamphetamine. The prosecutor's explanation does not fully account for all three amended informations, but the only objection made by defense counsel to the final amendment was that the defendant "[had] not been arraigned on this charge of acting in concert with Anna O'Brien on the charge of possession."

If we accept the State's explanation of the reason for the last-minute amendment of the information, the amendment was not within the proscription of § 545.300 or Rule 23.08. Amendments made to *correct* the information filed are not prejudicial to the defendant. *State v. Baker*, 548 S.W.2d 572, 574[5] (Mo.App.1975). Moreover, the addition of the words "acting with another" or "acting in concert with another" did not substantially change the information. *State v. West*, 484 S.W.2d 191, 195 (Mo. 1972); *State v. Morgan*, 546 S.W.2d 207, 208–209[1] (Mo.App.1977). As for the prejudice of which the statute and rule speak, the test of prejudice is whether a defense under the charge as originally made would be equally available after the amendment, and whether defendant's evidence would be

applicable after as well as before the amendment. *State v. Taylor*, 375 S.W.2d 58, 63 (Mo.1964); *State v. Rollie*, 585 S.W.2d 78, 87 (Mo.App.1979). In this case, the defense tendered was that Wilkerson had not "cleaned out the inside of [his] pickup" for two weeks and was totally unaware of the presence of methamphetamine or other drugs under the seat. This defense would have been as applicable to and as effective against a charge of selling a controlled substance as it would have been against a charge of possession.

The defendant did not plead guilty to, nor was he found guilty of, an offense with which he was not effectually charged, as was true in *Montgomery v. State*, 454 S.W.2d 571 (Mo.1970), and *State v. Couch*, 523 S.W.2d 612 (Mo.App.1975). The confused record before us makes it appear that the amendment represented an attempt to charge correctly and sufficiently the offense intended to be charged in the original information and did not operate to prejudice the substantial rights of the defendant. See *Johnson v. State*, 485 S.W.2d 73, 75[1] (Mo.1972); *State v. Gardner*, 522 S.W.2d 323, 324[2] (Mo.App.1975). Further, the precedents make it reasonably clear that, under the law in effect when this case was tried, the offense of possession of a controlled substance was a lesser offense included in the sale of a controlled substance. See *State v. Corley*, 639 S.W.2d 94, 96[4] (Mo.App.1982); *State v. Ashley*, 616 S.W.2d 556, 560[6–8] (Mo.App. 1981). A lesser included offense is not a different offense within the proscription of § 545.300 or Rule 23.08. *State v. Amerson*, 661 S.W.2d 852, 853 (Mo.App.1983). For this reason, if for no other, the first point is without merit.

■ The defendant's second assignment of error is that the trial court should have declared a mistrial sua sponte because in his summation the prosecuting attorney undertook to explain why particular persons had not been called as witnesses by the State. Admittedly, no objection was made to the argument now complained of. We are not inclined to give this point extended consideration.

In his summation, defendant's trial counsel advanced the argument that the State had not produced a single witness who could link the defendant to Anna O'Brien. The State's theory was that the defendant was O'Brien's accomplice, the argument ran, and why had the State called no witnesses who could link the two? The State responded at length. We will not repeat the arguments, but we are satisfied the State's closing argument was retaliatory and invited by the remarks of defense counsel. In such circumstances, our courts have generally refused to reverse the cause for improper argument. *State v. Bellew,* 586 S.W.2d 461, 463–64 (Mo.App.1979). The general rule applicable to this point is that a court should rarely grant relief on assertions of plain error as to closing argument. This is true because, in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention. *State v. Clemmons,* 753 S.W.2d 901, 907–08 (Mo.banc 1988), cert. denied 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). The point is without merit.

Defendant's third point is that the prosecutor erroneously and prejudicially argued an improper construction of Instruction No. 10, which was MAI–CR 3d 331.20 properly adapted to the circumstances. Paragraph "Third" of the instruction requires a finding that the defendant was not traveling in a continuous journey peaceably through this state. This paragraph was added, of course, because carrying a concealed weapon is not unlawful if the accused is traveling in a continuous journey peaceably through this state. Section 571.030.3.

During his closing argument, the prosecutor read this instruction to the jury and argued that because the defendant was traveling through the state in knowing possession of marihuana, he was not peaceably traveling through the state.

Such argument is not only a non sequitur; it is a positive misstatement of fact. There was no evidence that the defendant was in knowing possession of marihuana at any time. Nevertheless, no contemporaneous objection was made to the prosecutor's argument and the defendant is once again obliged to argue that the trial court should have declared a mistrial sua sponte. The precedents cited in connection with defendant's point two are controlling and dispositive here. We find no merit in point three.

Defendant's fourth point, giving it favorable intendment, is that there is no substantial evidence to support his conviction of carrying a concealed weapon in violation of § 571.030.1(1). We have doubt that this point was properly raised in the motion for new trial and therefore the issue was not preserved for review. Nevertheless, if the evidence was not sufficient to support the judgment of conviction, plain error has been committed. *State v. McClunie,* 438 S.W.2d 267, 268[1,2] (Mo.1969); *State v. Gardner,* 737 S.W.2d 519, 520[1][2] (Mo. App.1987). We shall consider the point.

Count I of the information upon which the defendant was tried charged a violation of § 571.030.1(1), which provides that:

"1. A person commits the crime of unlawful use of weapons if he knowingly:

(1) Carries concealed upon or about his person a knife, a firearm, a blackjack or any other weapon readily capable of lethal use. . . ."

The statute provides for a number of exceptions or, more properly speaking, exemptions. Section 571.030.3 provides, in pertinent part, that:

"3. . . . Subdivision (1) of subsection 1 of this section does not apply *when the actor is . . . traveling in a continuous journey peaceably through this state. . . .*" (Emphasis supplied.)

This exemption for travelers has been a part of our law since 1874. *State v. Mason,* 571 S.W.2d 246, 249 (Finch, J., dissenting) (Mo.banc 1978). This court considered the "travel" exemption at length in *State v. Cooper,* 563 S.W.2d 784 (Mo.App.1978). In that case the court held, among other things, that the burden was on the State to prove each element of the offense charged, and when the accused raises the special negative defense that he was within one of the exempted classes designated in the

statute, the State has the further burden to prove that the defendant was not within the exemption. *State v. Cooper,* 563 S.W.2d at 785; *State v. Achter,* 514 S.W.2d 825, 830 (Mo.App.1974). The specific question, then, is whether the State had proof that the defendant was not traveling in a continuous journey peaceably through this State when the crime charged was committed. A consideration of the evidence presented and some construction of the statute is required.

The State had evidence that when the defendant was arrested one of the officers asked if "there was a weapon involved." Defendant's response was that "it's just a .22, and it's in the truck." A Newton County Deputy Sheriff searched the pickup truck in which the defendant had been sitting and found a .22 caliber pistol in a wicker handbag "on the bench seat directly beside where the passenger would sit...." The pistol was fully loaded when the deputy found it. The defendant admitted he had put the pistol in the wicker bag. At the time defendant was taken in custody, there was a considerable quantity of methamphetamine and some cocaine in the truck.

The defendant had evidence that he lived in Bentonville, Arkansas; on August 30, 1987, he and Ms. O'Brien left Bentonville to go to Granby, in Newton County, Missouri. The two went to Granby to visit Ms. O'Brien's relatives and had intended to return to Bentonville the same day. The defendant had planned no stops, but at Ms. O'Brien's request he had stopped twice, each time for ten to fifteen minutes while Ms. O'Brien visited a friend. About 8:30 or 9:00 p.m. the defendant and Ms. O'Brien arrived at Ms. O'Brien's family residence in Granby where they stayed about an hour. When they left Granby they intended to go back to Bentonville but, according to the defendant, Ms. O'Brien insisted on stopping at the Ramada Inn, where the two were arrested.

■ On this evidence, the defendant makes an elaborate argument that the State failed to sustain its burden to show that the defendant was not traveling in a continuous journey peaceably through this state. The State argues that its burden has been met because the evidence shows that the purpose of the defendant's travel was unlawful. The defendant's answer to this proposition is that the purpose of his travel is irrelevant. There is respectable general authority to support the defendant's argument. *United States v. Prieto–Tejas,* 783 F.2d 1260, 1261 (5th Cir.1986); *Evers v. State,* 576 S.W.2d 46, 50 (Tex. Crim.App.1978). While we will not undertake a lengthy discussion of the subject, we conclude the "traveler's" exemption cannot be extended to travel which has an unlawful purpose.

The exemption is extended to enable travelers to protect themselves on the highways against such potential or unknown dangers as are not supposed to exist among their own neighbors. *State v. Horne,* 622 S.W.2d 956, 958 (Mo.1981). Further, because we are construing a proviso in the statute, we construe the phrase "continuous journey peaceably through this state" strictly, with doubts resolved in favor of the general provisions of the statute rather than the exemption. *State v. Mason,* 571 S.W.2d at 250 (Finch, J., dissenting); *City of Nevada v. Bastow,* 328 S.W.2d 45, 47–48[1] (Mo.App.1959). Several jurisdictions have exempted travelers from the operation of their weapons statutes, but the Texas traveler's exemption has received more attention than others. V.T.C.A. § 46.02(a) provides that "[a] person commits an offense if he intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club." Section 46.03(a)(3) provides that "[t]he provisions of Section 46.02 of this code do not apply to a person ... (3) traveling."

The commentary on § 46.03(a)(3) reads:
"Subdivision (3) is derived directly from prior law without any clarification, and the traveler's exemption was one of the most enigmatic provisions of the prior weapons offense. The courts never defined 'traveling' but in each case considered distance, time, and mode of travel. It was clear, however, that long

automobile journeys that kept the actor away from home overnight constituted traveling, *Allen v. State*, 422 S.W.2d 738 (Cr.App.1968). Today of course, unlike in 1871 when carrying pistols was made an offense and traveling was made an exemption, there are no longer roving bands of renegades molesting travelers."

In *United States v. Prieto–Tejas*, 783 F.2d at 1261–62, the United States Court of Appeals was hesitant to engraft an exception upon a statute without significant support in state court precedent or the language of the statute. Nevertheless, we are not persuaded that all sorts of movement through the state, regardless of purpose, are to be regarded as travel. It is doubtless still true that there are some travelers for whom the lower lights should be left burning, but the statutory exemption should not be construed as a license to carry a concealed firearm during the commission of a felony. We do not believe that a person traveling through this state in the commission of a felony is "traveling *peaceably*" within the meaning of § 571.030.3.

It is true, we think, that the Texas exemption is enigmatic; the Texas courts have not been of a single mind concerning the meaning of the word "traveling" in the Texas statute. *Tadlock v. State*, 124 Tex. Crim. 637, 64 S.W.2d 963, 964 (1933), and *Navarro v. State*, 50 Tex.Crim. 326, 96 S.W. 932 (1906), both support the proposition that a traveler who turns aside from a lawful journey to engage in unlawful activity forfeits the benefit of the exemption. The early Texas cases indicated, or at least indicate to us, that if the purpose of the travel was unlawful then the travel exemption did not apply. *State v. Starr*, 24 N.M. 180, 173 P. 674, 679–80[11] (1918). Florida has a traveler's exemption which allows certain individuals in specific circumstances to be in possession of firearms without incurring the penalties for carrying or possessing them without a license. However, as one Florida court has pointed out, there is no such thing as a license to carry a concealed firearm during the commission of a felony. *State v. Murray*, 382 So.2d 1372, 1373–74[2] (Fla.App.1980).

We reiterate that we undertake no general construction of the statute and we do not find it necessary to retract anything which was said in *State v. Cooper*, 563 S.W.2d at 786–87. In this case, however, a considerable quantity of methamphetamine—approximately 30 grams in 14 plastic bags—was being transported through the state. Cocaine was also found in the truck. If we adopt the construction of the traveler's exemption for which the defendant contends, then the couriers who transport tons of viciously addictive substances through Missouri along Interstate routes 70 and 44 will be given license to carry a pistol in order to facilitate their traffic in drugs. We decline to hold that this defendant was a "traveler" within the meaning of § 571.030.3.

Defendant's points five and six may be considered together. Certain statements made by the defendant to Officer John Glore were admitted in rebuttal after the defendant testified that he was unaware there were any controlled substances in his pickup truck, and in fact did not know there was a Crown Royal bag or sack under the seat in the pickup.

In rebuttal, the State offered a statement made by the defendant to Officer John Glore on September 1, 1987. The record concerning the circumstances in which the statement was made is confusing. It is necessary to quote from the testimony of Officer Glore:

\* \* \* \* \* \*

"Q. Let me back up a minute. I don't know where I left off. Do you recall a meeting on September 1st, with the defendant being present?

A. Yes, sir.

Q. Was anybody else present?

A. Yes, sir.

Q. Did you have occasion to read the defendant his Miranda rights?

A. Yes, I did.

Q. He indicate whether or not he understood his rights?

A. Yes.

Q. He indicate that understanding his rights he wished to talk to you?

A. Yes.

Q. Had you at that point made any type of any promises?

A. I told the defendant that what he was going to tell us—

Q. Okay, at the point he exercised his Miranda, had you given him any promises?

A. No.

Q. Had you made any threats?

A. No.

Q. And did he state he was willing to talk to you?

A. Yes.

Q. After he stated he was willing to talk to you, did you indicate anything in regards to spreading information that he was to tell you to anybody else?

A. I told the defendant that what he was going to tell us, I was going to go to the prosecutor with. He was telling me these items for possible consideration of his charge. And I told him that it wouldn't go any further."

\* \* \* \* \* \*

The court then permitted Officer Glore to testify that the defendant said he had received the methamphetamine "on credit" from a person in Bentonville, Arkansas, and that he, the defendant, "owed $5,400 on it." The defendant also told Glore that the $3,500 he had on his person came from drug sales and that he was "holding on" to the money because if Ms. O'Brien "had gotten hold of [the money]" she would have used it to buy cocaine.

■ As we are given to understand points five and six, they are, in substance, that the trial court should have had a hearing, outside the presence of the jury, to determine whether the inculpatory statement made to Officer Glore was voluntary, and that the statement was, in any event, involuntary because Glore's remarks were reasonably sufficient to induce and did causally induce an expectation or hope of worldly benefit. If so, assuming that the defendant's statement amounted to a confession, his confession was involuntary. *State v. Williamson*, 339 Mo. 1038, 1044, 99 S.W.2d 76, 79 (1936). Nevertheless, an ambiguous promise, such as informing the

defendant that a lesser charge might be considered if he confesses, or that giving additional information would be useful, does not amount to such coercion as to render the confession involuntary. *State v. Hunter*, 456 S.W.2d 314, 320–21 (Mo. 1970); *State v. McLallen*, 522 S.W.2d 1, 3–4[1] (Mo.App.1975). And, assuming that the defendant's statement to Glore was procured by trickery to the extent that Glore represented the defendant's statements would be relayed to the prosecutor and would go no further, such representation would not make the defendant's admissions involuntary. *State v. Phillips*, 563 S.W.2d 47, 54[2,3] (Mo. banc 1978), *cert. denied* 443 U.S. 904, 99 S.Ct. 3096, 61 L.Ed.2d 872 (1979); *State v. Simpson*, 606 S.W.2d 514, 517 (Mo.App.1980).

The defendant's complaint that the trial court did not conduct a hearing outside the presence of the jury to determine the voluntariness of the defendant's statements is likewise without merit. It is true that applicability of the exclusionary rule is a collateral matter which should be tried independently, *State v. Yowell*, 513 S.W.2d 397, 402–3[1–2] (Mo. banc 1974), but the trial court may, in its discretion, entertain a motion to suppress evidence at any time during the trial. Rule 24.05. The interrogation of witness John Glore prior to the reception of his rebuttal testimony was sufficient as a hearing on a motion to suppress and the defendant's procedural argument is unavailing.

■ The rebuttal evidence to which objection is made is subject to the rule that prosecutors may use illegally obtained statements to impeach a defendant's trial testimony given on direct examination, or to impeach a defendant's testimony given in response to questions on cross-examination, provided the statements were voluntarily made. *Mincey v. Arizona*, 437 U.S. 385, 397–398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 (1978); *Oregon v. Hass*, 420 U.S. 714, 722, 95 S.Ct. 1215, 1220, 43 L.Ed.2d 570 (1975); *Harris v. New York*, 401 U.S. 222, 224, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971). See *Project: Nineteenth Annual Review of Criminal Procedure*,

78 Geo.L.J. 699, 850–51 (1990). Defendant's points five and six are without merit.

 The defendant's final point is that there was no substantial evidence to support the conviction of possession of methamphetamine. As we understand the defendant's brief, it is his contention that the State did not prove the conscious possession essential to a conviction. The evidence must show, or permit the inference, that the accused was aware of the nature and presence of the substance and that he had some conscious control over it. *State v. Burns*, 457 S.W.2d 721, 725–26 (Mo.1970); *State v. Bowyer*, 693 S.W.2d 845, 847 (Mo. App.1985). In a case where the controlled substances are found on shared premises, possession of contraband does not, without more, permit the inference that contraband found rested within the possession and control of the accused. *State v. Bowyer*, 693 S.W.2d at 847. An analogy has been drawn between jointly shared premises and jointly shared automobiles. *State v. Bowyer*, 693 S.W.2d at 848–49[11].

 In the case before us, the vehicle in which the contraband was found was a 1982 Ford pickup truck. The truck was owned by the defendant's father, who was confined to a wheelchair. Ms. O'Brien occasionally used the pickup, but there is no evidence that she shared *control* of that vehicle with the defendant. We concede that mere disbelief of the defendant's statement that he had no knowledge of the presence of methamphetamine and other contraband in the truck would not satisfy the State's burden, *State v. Rivers*, 554 S.W.2d 548, 551[7] (Mo.App.1977), but ready access to the contraband (under the seat in a Crown Royal bag) and the presence of a large quantity of methamphetamine in the truck are circumstances which tend to show conscious possession of the contraband by the defendant. *State v. Bowyer*, 693 S.W.2d at 847.

The defendant understates the force of the State's evidence. He was only charged with possession, but there was evidence before the jury—aside from the statements received in rebuttal—which indicated that the defendant and his companion made several stops while they were driving from Bentonville to Granby and that a sale of methamphetamine was made when they stopped on their way back to Bentonville. About 30 grams of methamphetamine were recovered from the Crown Royal sack; each gram, according to one narcotics officer, would have sold for $100 to $125. "Mini-scales" were found in the truck. The defendant was in possession of $3,500 in cash and a fully loaded pistol. Given these circumstances, any jury could readily have inferred the defendant was trafficking in controlled substances, much as if he were a route salesman. The evidence is amply sufficient to show the defendant was in conscious, knowing possession of the contraband, and his point is devoid of merit.

In Appeal No. 15771, defendant's direct appeal, we find no prejudicial error in any respect argued in this court, and accordingly the judgment is affirmed.

### Appeal No. 16320

After the defendant was sentenced on June 7, 1988, he filed a timely notice of appeal in this court on June 10, 1988. For one reason or another, the record on appeal was not filed until January 10, 1989, but thereafter and on February 6, 1989, a motion for postconviction relief pursuant to Rule 29.15 was filed in the Circuit Court of McDonald County. A hearing was held on the postconviction motion on April 4, 1989, and the findings of fact and conclusions of law required by Rule 29.15(i) were filed on April 12, 1989. A timely notice of appeal was filed in this court and Appeals No. 15771 and 16320 were consolidated. Thereafter, a single brief was filed purporting to cover both appeals. As we have said, seven assignments of error were briefed, all dealing with the merits of the direct appeal. The brief laid before us recites some of the substance of the postconviction motion, which in general averred that defendant had been denied the effective assistance of counsel, but no "point" in the brief assigns error to the trial court's findings of fact and conclusions of law.

Rule 29.15 was adopted to replace former Rule 27.26, which was originally adopted in

1952. Because Rule 27.26 protracted the appeal process unreasonably, Rules 24.035 and 29.15 were adopted effective January 1, 1988. *Day v. State,* 770 S.W.2d 692, 693 (Mo. banc 1989), *cert. denied* — U.S. —, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989). Rule 29.15 no longer provides in terms, as did former Rule 27.26(a), that the procedure *on appeal* will be governed by the Rules of Civil Procedure, but Rule 29.15(j) does provide that an order granting or denying relief under the provisions of Rule 29.15 shall be deemed a final judgment for purposes of appeal by the movant or the State. Rule 29.15(j) also provides for the preparation of such transcript as is necessary for appellate review without request, and further states that appellate review of the motion court's action shall be limited to a determination whether the findings and conclusions of the trial court are clearly erroneous.

■ We find nothing in the history of Rule 29.15 which indicates that our Supreme Court intended to dispense with the requirement that error assigned on appeal be properly briefed. For many years our Supreme Court has held that on review of a postconviction proceeding, an appellate court will review only such matters as are properly briefed. *McQueen v. State,* 475 S.W.2d 111, 115–6[3,4] (Mo. banc 1971); *Brown v. State,* 492 S.W.2d 762 (Mo.1973). We must regard Appeal No. 16320 as having been abandoned. *Brown v. State,* 492 S.W.2d at 762–3; *Crow v. State,* 514 S.W.2d 13, 14 (Mo.App.1974). Accordingly, the judgment of the motion court is affirmed.

FLANIGAN, P.J., and MAUS, J., concur.

SHRUM, J., not participating because not a member of the court when cause was submitted.