**Dorzel E. KING, Sr., Appellant,**

v.

**STATE of Missouri, Respondent.**

No. WD 45498.

Missouri Court of Appeals,
Western District.

Oct. 6, 1992.

Donald L. Williams, Kansas City, for appellant.

William L. Webster, Atty. Gen., Joseph P. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and SPINDEN and SMART, JJ.

SMART, Judge.

This case presents the primary issue of whether a person driving through this state, who is charged with carrying concealed weapons, is entitled to the "peaceful traveler's exemption" contained in § 571.030, RSMo Supp.1992, when he is transporting an abundance of weapons, ammunition, and other items suggesting involvement in criminal activity. Dorzel King appeals from a conviction for unlawful use of a weapon in violation of § 571.030, for which he received a five year prison sentence.

Judgment is affirmed.

Defendant King, a resident of Kansas, was driving on Interstate 35 in Clay County, Missouri with two male passengers when they were pulled over for an improper lane change by officers who were on patrol for the Clay County Sheriff's Department on October 16, 1990. As defendant's car pulled off the road, the three men were observed by the officers to be bending over and moving around as if they were handling something underneath their seats. When asked to produce his driver's license, King produced a Kansas driver's license which, upon computer check, was found to have been suspended.

The officers placed King under arrest for driving with a suspended driver's license and moved him to the patrol car. When one of the officers went back to the car, he observed a clear plastic bag with some brown powder in it which he suspected was an illegal drug. The officers summoned a drug dog team to the scene. The drug dog did not indicate the presence of narcotics in the vehicle, but the dog handler noticed what he thought was part of a pistol protruding from underneath the driver's seat of the car. Based upon this observation, the officers searched the vehicle and found the following weapons: 1) an X–Cam .25 caliber semi-automatic pistol with a loaded clip lying next to it under the driver's seat; 2) a Colt .45 caliber semi-automatic pistol with a full magazine and a live round lying next to it under the driver's seat; 3) a Jennings .45 caliber semi-automatic pistol with a full clip and live round in the chamber in the coat pocket of a jacket located in the back seat; 4) a loaded Smith & Wesson revolver on top of other materials in the trunk; and 5) two stun guns, one under the passenger's seat and one in the trunk. Also found in the trunk were the following items: a pair of binoculars, two voice-activated FM transceivers, a box of rubber gloves, two pair of regular gloves, a ski mask, a notebook with several names, ad-

dresses, diagrams and figures, a portfolio with a partial listing of items found in the trunk, a photograph of a man with a large amount of cash and a mobile phone, a gray wig, two fake brown beards, a package of "theatrical gruesome skin," a plastic bag with two additional large wigs, fake mustaches, fake teeth, a bag containing make-up, a can of silver hair color, additional hair pieces, and additional fake skin.

After the discovery of the firearms, the occupants of the vehicle were charged with carrying concealed weapons in violation of § 571.030. At trial, King invoked the "peaceful traveler's exemption," asserting he was traveling peaceably through the state. The case was tried without a jury. The trial court found King guilty as charged, specifically finding that King did not fit within the peaceful traveler's exemption. King was sentenced to five years imprisonment. Defendant King appeals from this judgment.

### Traveler's Exemption provided in § 571.030

Defendant King contends that the trial court erred in failing to apply the statutorily provided peaceful traveler's exemption to the charge of carrying a concealed weapon because the State failed to show that King was not traveling peaceably through the state. In reviewing defendant's challenges to the sufficiency of the evidence presented, this court considers the state's evidence and all reasonable inferences drawn therefrom most favorably to the verdict, and disregards all contrary evidence. *State v. Livingston*, 801 S.W.2d 344, 345 (Mo. banc 1990). This court does not weigh the evidence, but only determines whether sufficient evidence was presented from which the trial court could conclude that defendant was guilty. *State v. Hood*, 680 S.W.2d 420, 423 (Mo.App. 1984). Furthermore, this court must examine the totality of the circumstances, *State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990), and defer to the trial court on issues of witness credibility. *State v. Beck*, 687 S.W.2d 155, 158 (Mo. banc 1985),

*cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986).

Section 571.030 provides:

1. A person commits the crime of unlawful use of weapons if he knowingly: (1) Carries concealed upon or about his person a knife, a firearm, a blackjack or any other weapon readily capable of lethal use....

3. Subdivision (1) of subsection 1 of this section does not apply when the actor ... is traveling in a continuous journey peaceably through this state.

■ The state bears the burden of proving each element of the offense and, if the defendant raises the special defense that he was traveling peaceably through the state, the state is further required to prove that the defendant did not fit within the exemption. *State v. Wilkerson*, 796 S.W.2d 388, 392–93 (Mo.App.1990). The precise question this court must address is whether the state presented sufficient evidence that King was not traveling peaceably through the state at the time of his arrest. As a part of that determination, this court must first determine the scope of the traveler's exemption.

■ It has been said that the primary purpose of statutes that prohibit the carrying of concealed weapons is "to break down the 'pernicious and dangerous' habit of carrying concealed weapons ... and to check and prevent, if possible, a practice which leads to woundings and injuries." *State v. Horne*, 622 S.W.2d 956, 958 (Mo. 1981). Included in that purpose, of course, is that of empowering law enforcement officers to disarm and prosecute persons intending to use their weapons in criminal activities. The purpose of the traveler's exemption, on the other hand, is to preserve the right of law-abiding citizens to "protect themselves on the highways against such potential or unknown dangers as are not supposed to exist among their own neighbors." *Id.* The exemption for peaceful travelers has been a part of our law since 1879, when outlaw marauders preyed upon western travelers. *State v. Mason*, 571 S.W.2d 246, 249 (Mo. banc 1978) (Finch, J., dissenting).

This exemption was examined in *State v. Wilkerson*, 796 S.W.2d 388 (Mo.App.1990). The court in that case held that the traveler's exemption does not extend to cases where the circumstances show that the traveler is engaged in illegal activities. *Wilkerson*, 796 S.W.2d at 393 (possession of illegal drugs). The court there, looking at the construction of similar legislation in Texas and Florida, determined that the phrase "continuous journey peaceably through this state" should be construed strictly, with doubts resolved in favor of the general provisions of the statute rather than the exemption. *Id.* at 393. In concluding that the traveler's exemption did not extend to an instance where a concealed firearm was being transported along with illegal methamphetamine and cocaine, the Southern District stated:

> we are not persuaded that all sorts of movement through the state, regardless of purpose, are to be regarded as travel. It is doubtless still true that there are some travelers for whom the lower lights should be left burning, but the statutory exemption should not be construed as a license to carry a concealed firearm during the commission of a felony. We do not believe that a person traveling through this state in the commission of a felony is 'traveling *peaceably*' within the meaning of § 571.030.3.

*Id.*

 This reasoning also suggests that the legislature would not have intended for the peaceful traveler's exemption to apply where the travel is only incidental to the defendant's purpose to engage in criminal activity. Thus, a traveler who happens to be fleeing the scene of an armed robbery he committed in another state would not be entitled to the "peaceful traveler's exemption." Similarly, this court concludes that the exemption cannot be invoked where the travel is incident to planned criminal activity involving the use of weapons.

 Having established the scope of the exemption, we now consider whether the state presented sufficient evidence to prove that defendant King was not entitled to the benefit of the "peaceful traveler's exemption." The police officers who arrested King found three high caliber semi-automatic firearms and one revolver after searching his car. All of the firearms were either fully loaded and ready to fire, or had ample ammunition lying next to them. Three of these weapons were easily accessible to King and his co-defendants in the interior of the automobile. One weapon was on top of other materials in the trunk. Stun guns (designed to temporarily immobilize people) were also recovered from the contents of the automobile. In the trunk, police also found a pair of binoculars, two FM transceivers, rubber gloves, a ski mask, a notebook, a photograph of a man with a large amount of cash and a mobile phone, two fake beards, a package of "theatrical gruesome skin", wigs, fake mustaches, makeup, hair color, and similar items. One does not infer from the circumstantial evidence of the weapons, ammunition, and other items that King and his cohorts were on their way to a Sunday school convention. Nor would all of the weaponry be necessary for a halloween party. Moreover, the trial court had the benefit of evaluating the testimony of King, who elected to testify and presented an explanation which the trial court found to be completely lacking in credibility.[1] When all of the evidence is considered together, it is sufficient to support the finding of the trial court that defendant King and his co-defendants had an unlawful purpose in traveling through this state, the

---

1. In his testimony, King admitted possession of two of the firearms. He claimed that he did not know about the other firearms in the car. He explained the items in the trunk by saying that the car was his wife's car, and that they have three children, and "like any average family … we just kinda throw things in there and things are just in there." On direct examination, King offered no explanation at all for the weapons, and on cross-examination he stated that the reason for the guns was that he lives "in a high crime area with a lot of gang violence." His testimony that two of the guns belonged to him was contradicted by evidence of a prior inconsistent statement he allegedly made at his preliminary hearing (that only one gun belonged to him). King stated that he and his two friends were planning to drive to Iowa to visit another friend of his.

unlawful purpose being to engage in armed criminal activities.[2] Therefore, the trial court did not err in finding that King is not entitled to the peaceful traveler's exemption provided in § 571.030.

### Pretextual Arrest

■ Defendant King's second point on appeal is that the trial court erred in overruling his motion to suppress evidence of the weapons seized from the vehicle because the search of the vehicle was in violation of his Fourth Amendment rights as guaranteed by the United States Constitution and Article I Section 15 of the Missouri Constitution. King contends that his arrest was merely pretextual and that the arrest was effectuated solely so the officers could search his vehicle. In evaluating this contention, the court examines the evidence presented on the suppression issue to determine whether the evidence is sufficient to sustain the findings of the trial court. *Burkhardt*, 795 S.W.2d at 404.

■ An arrest may not be used as a pretext to search for evidence. *State v. Blair*, 691 S.W.2d 259, 262 (Mo. banc 1985). Any evidence procured by a pretextual arrest is inadmissible. *State v. Dulany*, 781 S.W.2d 52, 57 (Mo. banc 1989). King's sole complaint concerning the arrest and the search of the automobile is with the purpose of the initial stop. Defendant King changed from the left hand lane of Interstate 35 to the right hand lane without signaling, either by proper hand signal or by blinker, to indicate that he was going to change lanes. The officer testified that the sole reason he stopped King was for the improper lane change. He testified that he did not stop every driver making an improper lane change, but that he had stopped approximately 50 to 100 drivers for such an offense. The trial court found King's act of improperly changing lanes a

violation of § 304.019, RSMo 1986, stating that "whether or not all of those, or even most of those who do such a thing may not be stopped, does not keep it from being a violation of the Missouri statutes."[3] The trial court determined that the stop was not pretextual, after considering and evaluating the testimony. Although the circumstances here may raise suspicion that the stop was pretextual, the question of whether the stop was pretextual is primarily a question of credibility. The question of the good faith of the arresting officers is capable of adjudication. *State v. Moody*, 443 S.W.2d 802, 804 (Mo.1969). This court gives great deference to the credibility findings of the trial judge. This court may overturn such findings only when they are clearly erroneous. *State v. Milliorn*, 794 S.W.2d 181, 183–184 (Mo. banc 1990). This standard of review "acknowledges the inability of an appellate court to determine credibility from the lifeless pages of a record." *Id.* at 184. Here, it cannot be said that the trial court's determination was clearly erroneous. *State v. Beck*, 687 S.W.2d 155, 158 (Mo. banc 1985).

### Operability of the Firearms

■ King's final point on appeal is that the trial court erred in overruling King's motion for reconsideration because it was plain error to convict King of carrying a concealed weapon, in that the state did not offer any proof that any of the weapons were in operable condition. This argument was not made to the trial court, so it is reviewable only under Rule 84.13(c). Defendant has cited no authority dealing with § 571.030.1(1) which provides that the state must prove that a firearm is operable in order to convict an accused under this section. In any event, the fact that the weapons all were either loaded or accompanied

**2.** Even if there had been no inculpating evidence in the trunk, the applicability of the traveler's exemption might be questionable where the number of weapons being transported indicates that the traveler had more in mind than mere self-protection.

**3.** King did not deny failing to signal before changing lanes. Thus, it is undisputed that a

traffic offense was committed. It is not clear that the issue of pretext can even be raised where the officer had a legitimate reason for making the stop. *See U.S. v. Cummins*, 920 F.2d 498, 501 (8th Cir.1990); *U.S. v. Maejia*, 928 F.2d 810, 814 (8th Cir.1991). It is not necessary to reach that issue in this case since the trial court found the arrest was not pretextual.

by live ammunition, as well as King's testimony that the weapons were for protection, supports the reasonable inference that the weapons were operable. This court determines that no error was committed by the trial court in this regard. Point III is denied.

Judgment is affirmed.

All concur.