**STATE of Missouri (Respondent),**

v.

**Michael REHBERG (Appellant).**

**No. WD 50759.**

Missouri Court of Appeals,
Western District.

Dec. 5, 1995.

As Modified on the Court's Own
Motion Jan. 30, 1996.

Respondent's Motion to Modify Opinion
Denied Jan. 30, 1996.

Michael J. Gunter, Kansas City, George E. Becker, Chicago, for Appellant.

Philip M. Koppe, Asst. Attorney General, Kansas City, for respondent.

Before FENNER, C.J., P.J., and ULRICH and SMITH, JJ.

SMITH, Judge.

After a court-tried case, appellant was convicted of the Class C felony of stealing in violation of § 570.030, R.S.Mo., 1994. The trial court sentenced him to four years in the Missouri Department of Corrections. Appellant appealed his conviction claiming: (1) the trial court erred in admitting evidence of uncharged crimes; (2) the trial court erred in admitting physical evidence without proper authentication; and, (3) the trial court erred in overruling his motion for acquittal in that the evidence was insufficient to prove appellant guilty beyond a reasonable doubt. We affirm.

## I. Facts

Kevin Strain, a loss prevention agent for Builders Square located at 14221 East 40 Highway, Kansas City, Missouri, testified he observed appellant in the store on November 2, 1993, pushing a shopping cart with an opened lamp box in it. Strain observed appellant take the lamp from the box and place it on a shelf next to two other lamps. Appellant placed the opened box on a pallet of rock salt in the plumbing aisle. He then placed various plumbing fixtures in the box, resealed it with tape and placed it back on the shelf, after which he exited the store.

Strain testified that upon exiting the store he saw appellant get into a four-door, white Grand Am, after which the vehicle moved to another location in the parking lot. The driver of the vehicle entered the store and proceeded immediately to the aisle where the box had been placed by appellant. The box was retrieved by him and taken to a register where he paid for the value of the lamp only.

As the driver of the vehicle left the store he was stopped by Strain and placed in the custody of a store manager. Strain then approached the white Grand Am by which appellant was standing and asked him to return to the store. The police were called. Before the police arrived, Strain opened the box and found four massage sprayers valued at $179.98, five Moen faucets valued at $795.00, and two paint sprayers valued at $294.00 for a total retail value of $1,267.98. When the police arrived, both men were arrested and taken into custody. The box and the items taken were returned to the store after being inventoried by the police.

Clifford Means, who was the Dallas–Fort Worth district loss control manager for K–Mart Corporation in September of 1992 and who at the time of his testimony was the regional loss control manager, testified that on September 29, 1992, he participated in a meeting in Houston, Texas, with appellant and Greg Saputo, Means' direct supervisor. At the meeting, appellant told them of a scam to obtain merchandise and money from K–Mart Corporation and that the purpose for telling them was so he could become a consultant for K–Mart. Appellant identified K–Mart, Builders Square, Venture, Service

Merchandise, and Toys–R–Us as retailers he targeted. Appellant claimed his favorite store to steal merchandise from was Builders Square and that he operated in Houston, Chicago, Cincinnati, Indianapolis, Kansas City, and Independence.

Means testified that appellant told them that he would enter a store; remove a lamp from a box; and, fill the box with faucets, fishing reels, and other easily stolen merchandise. Appellant would fill the box while an accomplice waited in a car outside the store and that either he or the accomplice would then purchase the lamp box.

Appellant stated he had been using the scam for four years and had made $1,000,000 exchanging the stolen items at K–Mart for cash. Finally, the witness testified that appellant accompanied them to a local Builders Square and demonstrated how he used the lamp box in the scam.

The State filed a motion for a pretrial ruling concerning the admissibility of the testimony of Means, which was sustained by the Court over the objection of appellant. The motion was reargued just prior to the commencement of trial and again denied. At the close of the evidence, appellant moved for a judgment of acquittal which was overruled. Appellant offered no evidence and renewed his motion for judgment of acquittal which was overruled. Appellant was found guilty of the Class C felony of stealing.

Appellant filed a timely motion for judgment of acquittal or in the alternative for a new trial which were denied. A judgment of conviction was entered and appellant sentenced to four years in the Missouri Department of Corrections. A timely appeal was taken by appellant.

## II. Compliance with Rule 30.06(d)

The State asserts that appellant failed to comply with Rule 30.06(d) in that each of his points relied on in his brief fails to set forth "wherein and why" the actions or rulings of the trial court were erroneous. As a result, the State argues that appellate review of the points raised on appeal should be denied except for plain error review. Rule 30.20.

It is true that the court may deny appellate review for failure to comply with 30.06(d). *State v. Nenninger,* 872 S.W.2d 589 (Mo.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 589, 130 L.Ed.2d 503 (1994). However, in criminal cases, when appellant's arguments make clear the grounds for alleged error, it is preferable to decide cases on the merits to avoid punishing appellant for the shortcomings of appellate counsel. *State v. Sloan,* 756 S.W.2d 503, 505(2) (Mo. banc 1988), *cert. denied,* 489 U.S. 1040, 109 S.Ct. 1174, 103 L.Ed.2d 236 (1989); *State v. Tivis,* 884 S.W.2d 28, 29(2) (Mo.App.1994).

Although standing alone appellant's points relied upon are inadequate and do not comply with Rule 30.06(d), his arguments do clarify the grounds for alleged errors sufficiently to allow appellate review. However, the court would caution appellate counsel to be more mindful of the requirements of Rule 30.06(d) in the future and not rely on the court to allow appellate review on the merits regardless of the degree of noncompliance with the rule.

### III. Points on Appeal

#### A. Point I—Testimony concerning uncharged crimes was admissible.

For his first point appellant claims that the trial court committed prejudicial error in admitting his statements made to Clifford Means in that such evidence was evidence of uncharged crimes which was not logically or legally relevant to the issue of his guilt.

The general rule is that the admission of evidence of uncharged misconduct or crimes is inadmissible to show the propensity of a defendant to commit the crime with which he is charged. *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993). However, "(e)vidence of prior misconduct of the defendant, although not admissible to show criminal propensity, is admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial, *State v. Sladek,* 835 S.W.2d 308, 311 [Mo.1992] (quoting *State v. Reese* [364 Mo. 1221], 274 S.W.2d 304, 307 (Mo. banc 1954)), and if the evidence is legally relevant, that its probative value outweighs its prejudicial ef-

fect. *State v. Mallett,* 732 S.W.2d 527, 534 (Mo. banc), *cert. denied,* 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987)." *Bernard,* 849 S.W.2d at 13.

When discussing logical relevancy, the Supreme Court in *Bernard* refers to recognized "exceptions" to the general rule against admitting evidence of uncharged misconduct to show propensity. However, the court clearly points out that those "exceptions" do not allow the admission of evidence of uncharged conduct to show the propensity to commit the crime charged, but is admissible because such evidence has "some legitimate tendency to establish directly the accused's guilt". *State v. Bernard,* 849 S.W.2d at 13. Inasmuch as the utilization of the "so-called" exceptions to show criminal propensity is prohibited by the rule, the purported exceptions to the general rule are not exceptions at all, but logically relevant bases for allowing admission of evidence to show something other than the propensity to commit a crime. If the rule was restated to provide that evidence of uncharged crimes is generally not admissible for any purpose, the term exception would be accurate in reference to the admission of such evidence to show something other than propensity, i.e., motive, intent, etc.

Evidence of uncharged crimes has been held to be logically and legally relevant and, therefore, admissible to show (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the person charged with the commission of the crime on trial. *Id.* at 13; *Sladek,* 835 S.W.2d at 311. This list is not all inclusive or exhaustive. *Bernard,* 849 S.W.2d at 13. The *Bernard* court also recognized a sixth basis for admission of evidence of uncharged crimes—the signature modus operandi basis.

The State contends that the testimony of Means was admissible under all six bases recognized in *Bernard.* On the facts of this case, we agree that Clifford Means' testimony was admissible on the grounds of motive,

intent, and identity and accordingly decline to decide whether the other three bases apply.

■ Appellant claimed at trial and now on appeal that the eyewitness to the crime, Clifford Means, was mistaken as to the identity of appellant as the person in Builders Square on the day in question. Appellant also claims that even if he did commit the acts testified to by Means that such acts did not constitute a crime because he at no time "appropriated" the property in question as required by § 570.030. Section 570.030, RSMo 1994, provides in pertinent part:

"1. A person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion."

By making such claims, appellant injected the material issues of motive, intent, and identity into this case. Consequently, any evidence logically and legally relevant to those issues would be admissible. *Bernard*, 849 S.W.2d at 13.

■ In order for evidence to be logically relevant, it must reasonably tend to prove a material fact in issue. *Sladek*, 835 S.W.2d at 311. Means' testimony would reasonably tend to prove appellants' motive, intent, and identity in this case.

■ As to appellant's motive and intent, Means' testimony would show that appellant's acts were in furtherance of his intent to wrongfully appropriate the property of Builders Square and thereafter to redeem the property for his personal profit. The evidence was therefore logically relevant to prove motive and intent.

■ To be admissible, evidence of uncharged misconduct must not only be logically relevant, but must be legally relevant. *Bernard*, 849 S.W.2d at 13. Such evidence is legally relevant if its probative value outweighs its prejudicial effect. *Id.* at 13. "The balancing of the effect and value of evidence rests within the sound discretion of the trial court." *Id.* at 13.

■ It is rare when the State has available direct evidence of the defendant's mo-

tive and intent. In almost all cases, the State is forced to rely on circumstantial evidence for proof of those issues. The evidence in this case as to motive and intent consisted of actual statements of appellant as told by Means. Under such circumstances, the trial court did not abuse its discretion in determining that the probative value of Means' testimony outweighed its prejudicial effect and was legally relevant.

Since Means' testimony was logically and legally relevant in establishing motive and intent, we find that the trial court did not err in admitting his testimony.

■ Having determined that Means' testimony was admissible on the basis of establishing motive and intent, it is not necessary to determine if it was admissible on any other basis. However, since identity is a material issue in this case, we will determine, *ex gratia*, the admissibility of Means' testimony on the issue of identity. Prior to the recognition in *Bernard* of the signature modus operandi basis, identity was already a recognized basis for admitting evidence of uncharged misconduct. *Sladek*, 835 S.W.2d at 311. In analyzing the admissibility of evidence of uncharged misconduct bearing on the issue of identity, Judge Elwood Thomas in his concurring opinion in *Bernard*, 849 S.W.2d at 25, wrote that signature evidence should be admissible in the signature "identity" case where the issue is not whether the unusual act occurred but the identity of the actor, but should not be admissible in the signature "corroboration" case where the issue is not identity, but whether the act occurred. The issue in the case at bar is not whether the act occurred, but the identity of the actor, or in other words, this is a signature identity case as delineated by Judge Thomas.

As to a straight identity or a signature identity analysis, Means' testimony was logically relevant in that it reasonably tended to show that appellant was, in fact, the person he observed in Builders Square on the day in question. Thus, the evidence bears directly on the issue of appellant's guilt as opposed to merely showing a propensity to commit like or similar crimes and is logically relevant.

As to legal relevancy, the probative value of Means' testimony as it relates to identity clearly outweighs its prejudicial effect under a straight identity or signature identity analysis. Although obviously prejudicial to appellant, the evidence in question is highly probative to prove identity.

Under a straight identity analysis, where, as in this case, a defendant denies his participation in a crime after being identified by an eyewitness, evidence consisting of statements of the defendant detailing identical crimes and a demonstration of the same satisfies the legal relevancy requirement as it relates to establishing identity with evidence of uncharged misconduct.

Under a signature identity analysis, legal relevancy exists if the uncharged crimes and charged crimes are nearly identical and their methodology are so unusual and distinctive as to be a signature of the defendant's modus operandi. *Id.* at 17. In this case, the uncharged and charged crimes are clearly identical. The only issue is whether their methodology is sufficiently unusual and distinctive to render it a signature of appellant. We find that it is.

In determining the unique or unusual nature of the methodology used in committing a crime, the focus should not be on any one step of the methodology, but its entirety. Appellant's scam basically consisted of entering a large retail store such as Builders Square, opening a lamp box, placing the lamp on the shelf, placing plumbing fixtures in the box, sealing the box, placing it back on the shelf, and then having an accomplice purchase the box for the price of the lamp. Although the scam is certainly replicable and does not require any special talent, on the whole it is not a run of the mill scam. It is ingenious, efficient, well thought out, and definitely unique and unusual.

We find Means' testimony as to uncharged misconduct was not only logically and legally relevant in establishing motive and intent, but also identity. As a result, we find the trial court did not err in admitting his testimony on the basis of establishing identity.

Appellant argues that even if the evidence of uncharged crimes was logically and legally relevant it was not admissible because the *corpus delecti* of those crimes were never established. In support of this argument, he cites *State v. Ziegler,* 719 S.W.2d 951 (Mo. App.1986). This argument is without merit and is not supported by the authority cited.

Appellant's argument assumes, without any authority, that admissions by him as to uncharged crimes were not admissible because the State was required to prove the *corpus delecti* of the uncharged crimes and failed to do so. It is true that the State has the burden of proving the *corpus delecti* of the crime charged, either with direct or circumstantial evidence. *State v. Masa,* 781 S.W.2d 249, 250 (Mo.App.1989). However, a thorough reading of the cases dealing with the rule for admissibility of evidence of uncharged crimes does not reveal any requirement of such proof as to the uncharged crimes. There is good reason for there being no such requirement.

The *corpus delecti* of a crime is established by proof of the crime charged and that the crime was committed by someone. *State v. Jackson,* 762 S.W.2d 504, 505 (Mo.App.1988). The general rule is that out-of-court confessions of the defendant alone are not sufficient to prove guilt of the crime charged. *Id.* at 505. The purpose of the rule is to insure that criminal convictions are based on clear and cogent evidence that excludes all reasonable hypotheses of innocence. *Masa,* 781 S.W.2d at 250. The rule has no applicability in this case in that appellant's admissions were not introduced to convict him of the uncharged crimes to which he confessed. The admissions were admitted along with other direct and circumstantial evidence of guilt to convict him of the crime charged which was unrelated to his out-of-court confession as to uncharged crimes.

The State's burden in this case was to establish the corpus delecti of the crime charged, which was clearly established with evidence other than the mere out-of-court confession of appellant as to uncharged crimes. The failure of the trial court to require proof of the corpus delecti of the uncharged crimes as a prerequisite to admis-

sion of the uncharged crimes evidence was not in error.

Finally, once the statements of appellant were admitted, he had the opportunity to take the stand and deny the statements he made to Means. However, he chose not to do so. For appellant to now contend that his admissions to Means were unreliable without some corroboration and were therefore inadmissible, is disingenuous.

■ Even if we had found that the admission of the uncharged crimes evidence was improper, it would not have required reversal in this case. In a court-tried case, there is no prejudice and reversal is not mandated unless the improperly admitted evidence is relied upon by the court in reaching its findings of fact and conclusions of law. *Sladek*, 835 S.W.2d at 313.

■ In finding the appellant guilty, the trial court stated: "I think the case could be successfully tried without Mr. Means' testimony. I am willing to ignore Mr. Means' testimony and convict in this case." (Tr. 93). It is obvious that the trial court found appellant guilty without relying on the evidence which appellant claims was improperly admitted. Consequently, no prejudice was occasioned even if the uncharged crimes evidence was improperly admitted and reversal is not mandated.

Point I denied.

B. Point II—No physical evidence was admitted without proper authentication.

For his second point, appellant contends that the trial court erred in admitting without proper authentication items not connected to appellant and the crime charged. Appellant's contention is without merit.

There were six exhibits marked at trial: (1) lamp box; (2) incident report; (3) photograph of items in box; (4) Moen faucet; (5) shower massage; and, (6) Wagoner sprayer. Although all six exhibits were marked for identification and were identified, only Exhibit 3 was formally offered and admitted into evidence. The record will reflect that the other five exhibits, including the replicas of the items stolen, were never offered for

admission. There is some authority that under some circumstances exhibits not formally offered and admitted are deemed "in evidence" because they were treated by both sides as if they had been received into evidence. *State v. Sanders*, 608 S.W.2d 507, 509 (Mo.App.1980). We need not decide whether that is the case here in that contrary to appellant's contention, there existed proper authentication for admission of the exhibits in question.

The record is clear that the items were never represented by the State as "real" evidence, actual evidence connected with the defendant or crime charged, but only as demonstrative evidence. The use of demonstrative evidence in this case was made necessary because the "real" evidence was returned by the police to Builders Square and was unavailable at trial.

■ The admission of demonstrative evidence, evidence which is not the actual evidence connected with either the defendant or the crime charged, is within the sound discretion of the court. *State v. Silvey*, 894 S.W.2d 662, 667–668 (Mo. banc 1995). To be admissible, such evidence must: (1) be relevant; (2) fairly represent the conditions which it is offered to show; and, (3) not mislead the trier of fact. *Id.* at 668.

■ Exhibits 1, 4, 5, and 6, were clearly relevant to demonstrate to the court what items were actually stolen, an element of the crime which the State had the burden of proving. The testimony reasonably helped to establish that the items were identical to the ones connected with appellant and the crime charged. Finally, the court was never misled in that it was advised that the items were not the ones actually stolen, but replicas. Consequently, a proper foundation was laid for the admission of Exhibits 1, 4, 5, and 6.

■ Inasmuch as the exhibits were never formally admitted, did the trial court improperly rely on evidence never admitted in convicting appellant? This issue was not raised on appeal by appellant. Consequently, the only review would be for plain error under Rule 30.20. Plain error review is ap-

propriate even if not requested or briefed when the court finds that manifest injustice or a miscarriage of justice has resulted. Rule 30.20; *State v. Isa,* 850 S.W.2d 876, 884 (Mo. banc 1993). We find no plain error in this case as a result of the exhibits being identified, but not formally admitted.

No manifest injustice exists under the circumstances in this case in that the exhibits would have been admissible if offered. In addition, no manifest injustice exists because there was sufficient evidence other than the evidence in question to establish appellant's guilt.

To obtain a conviction for the Class C felony of stealing under § 570.030, the State was required to prove that appellant appropriated items of a value of at least $150. Without relying on Exhibits 1, 4, 5, and 6, the State was able to carry its burden of proof. Apart from the exhibits in question, Exhibit 3 and live testimony established what items were appropriated and that their values exceeded $150. The State was not required to introduce the actual items appropriated. *State v. Landes,* 661 S.W.2d 596, 598 (Mo. App.1983); *State v. Huffman,* 659 S.W.2d 571, 573 (Mo.App.1983).

Since it was not necessary for the trial court to rely on Exhibits 1, 4, 5, and 6 to convict, there is no resulting manifest injustice when the exhibits in question were testified to, but never admitted. *Sladek,* 835 S.W.2d at 313.

Point II is denied.

### C. Point III—The evidence was sufficient to show the appellant "appropriated" the items from Builders Square.

On this point, appellant contends that the trial court erred in not sustaining his motion for acquittal at the close of the evidence in that there was insufficient evidence from which the trial court could find that appellant appropriated property as required by § 570.030. He contends that if the items were appropriated, they were appropriated by the individual who paid for the lamp box and exited with it from the store. We disagree.

In a court-tried criminal case, the standard of review is the same as it is in a jury-tried case and that is whether or not there was sufficient evidence from which the trier of fact could have reasonably found guilt. *Sladek,* 835 S.W.2d at 310. In making that determination, we accept as true all evidence tending to prove guilt together with all reasonable inferences that support the finding, and all contrary evidence and inferences are ignored. *Id.* We do not weigh the evidence or decide the credibility of witnesses. *Silvey,* 894 S.W.2d at 672.

The common law distinctions between principals and accessories have long ago been eliminated. *Isa,* 850 S.W.2d at 898. Persons who act in concert to commit a crime are equally guilty. *Id.* A person may be charged as either a principal or an aider and abettor with criminal liability being submissible on both theories. *Id.* The evidence need not show that the defendant personally committed every element of the crime, *State v. Howard,* 896 S.W.2d 471, 494 (Mo.App.1995); *State v. Nguyen,* 880 S.W.2d 627, 634 (Mo. App.1994), and need not place him "in the act of committing the crime for which he is charged". *State v. Carter,* 849 S.W.2d 624, 627 (Mo.App.1993).

The eyewitness testimony in this case establishes that appellant acted in concert with his accomplice to commit the crime of which he was convicted. Appellant was observed at the scene of the crime taking the lamp from the box, placing the items in the box, resealing the box, and placing it back on the shelf. Appellant was seen associating with his accomplice immediately after his actions in the store and immediately before his accomplice purchased the lamp. In addition there was the evidence of the uncharged crimes, which we found admissible, that would show appellant's intent to appropriate the items from Builders Square.

Accepting the State's evidence as true and ignoring evidence to the contrary, we find the trial court did not err in overruling the appellant's motion for acquittal. The evidence was legally sufficient to support the denial of the motion and the conviction.

Point III denied.

## V. Order

Finding no error, we deny appellant's three points on appeal and affirm the judgment of conviction for the Class C felony of stealing under § 570.030.

All concur.