**STATE of Missouri, Respondent,**

v.

**Casey D. DAVIS, Appellant.**

**No. WD 59419.**

Missouri Court of Appeals, Western District.

March 19, 2002.

Jeremiah W. (Jay) Nixon, Atty. Gen., Anne E. Edgington, Asst. Atty. Gen., Jefferson City, for Respondent.

Michael J. Svetlic, Douglas G. Wemhoff, Kansas City, for Appellant.

Before SPINDEN, C.J., EDWIN H. SMITH, J., and TURNAGE, Sr.J.

EDWIN H. SMITH, Judge.

Casey D. Davis appeals the judgment of his conviction for unlawful use of a weapon, § 571.030.1(1),[1] following a bench trial in the Circuit Court of Clay County. As a result of his conviction, the appellant received a suspended two-year sentence in the Missouri Department of Corrections and was placed on probation for five years.

The appellant raises two points on appeal. In both points, he claims that the trial court erred in overruling his motion for judgment of acquittal at the close of the State's and all the evidence. Specifically, he claims that having injected at trial the special negative defenses, commonly referred to as the "travelers' exemption" and the "non-lethal use exemption," as provided in § 571.030.3, the State was required, but failed, to prove beyond a rea-

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

sonable doubt that the exemptions did not apply.

We affirm.

### Facts

On February 5, 2000, at approximately 7:00 p.m., Police Officers Paul White and Robert Hurt of the Excelsior Springs Police Department were patrolling the downtown area of Excelsior Springs when they observed a silver Oldsmobile with two occupants. The officers subsequently learned that the vehicle was being driven by the appellant. While following the appellant's vehicle, the officers conducted a computer check of the vehicle's registration. As they followed the appellant's vehicle, they observed him make three right-hand turns, the last of which he forgot to signal. As a result, the officers stopped the appellant's vehicle for failure to signal.

Officer Hurt approached the vehicle and informed the appellant of why he had been stopped. While talking to the appellant, Officer Hurt detected an odor of alcohol on his breath. While this was occurring, Officer White and Corporal Chris Shafer, who had arrived to provide backup, observed the appellant fidgeting and reaching for his coat pocket. As a safety precaution, they told Officer Hurt to have the appellant step out of and away from the vehicle.

After the appellant had exited his vehicle, Corporal Shafer asked him if he had been drinking. The appellant responded that he had not been. Corporal Shafer then asked the appellant if he would be willing to submit to a portable breath test, and the appellant agreed. The test was administered, and the appellant's blood alcohol level registered at .04 percent. The appellant subsequently admitted that he had been drinking, advising the officers that there was a bottle of whiskey under

the front seat of the car. Corporal Shafer looked through the passenger window into the vehicle and observed what appeared to be a bottle of whiskey protruding from underneath the front passenger seat. He asked the passenger to step out of the vehicle [2] and conducted a search thereof, finding a Seagram's Seven whiskey bottle underneath the front passenger seat; a bottle of "Two Dogs Lemonade Brew" in the front passenger door; a baseball bat wrapped in black tape, which was covered by a coat; and a styrofoam cup containing some sort of alcoholic beverage. Since both the appellant and the passenger were under the age of twenty-one, Officer White placed them under arrest, citing them for being minors in possession of alcohol, § 311.325, and with having an open container, § 577.017.

After placing the appellant and the passenger under arrest, Officer White asked the appellant if he had any illegal items on his person. The appellant replied that he had an unloaded pistol in his right coat pocket. Officer White then removed a .22 caliber pistol from the appellant's front coat pocket. The pistol's breech was open, and it was unloaded. Officer White then asked the appellant if he had any ammunition for the gun. The appellant advised him that there was ammunition for the gun in the left inside pocket of the coat he was wearing. Officer White searched that pocket and found a nylon pouch containing several rounds of .22 ammunition, including hollow points. He then placed the appellant under arrest for carrying a concealed weapon. Both the appellant and his passenger were transported to police headquarters for booking, where later that evening, Officer Hurt test-fired the appellant's gun, using the ammunition seized, and found it to be operational.

---

2. The name of the passenger was never mentioned at trial.

On May 24, 2000, the appellant was charged by indictment in the Circuit Court of Clay County with the class D felony of unlawful use of a firearm, § 571.030.1(1), for "knowingly carr[ying] concealed upon or about his person a firearm, to-wit: a .22 caliber pistol, which weapon was readily capable of lethal use." On August 17, 2000, the appellant filed a written notice advising the court of "his intention at trial to assert the defense of: traveling in a continuous journey peaceable through this state." On August 31, 2000, the appellant waived his right to a jury trial. That same day, he filed a second written notice, advising the court of "his intention at trial to assert the defenses of: 1. Any weapon was in a nonfunctioning state, 2. Any weapon was unloaded and ammunition was not readily accessible."

The appellant's case proceeded to a one-day bench trial before the Honorable Michael J. Maloney on September 5, 2000. The State's case consisted of testimony from Officers Shafer, White and Hurt. After the State had rested its case, the appellant made an oral motion for judgment of acquittal asserting that there "was no evidence that the weapon was found in a functioning state" and "[t]he evidence is uncontradicted that he was on a continuous journey [and] would never have stopped until the police stopped him." With respect to the motion, the court stated, "[F]or now, I'm overruling the motion, and just take my comments as an indication that you can argue those same points with the same vigor without a judge saying, why are you talking about this when I've already ruled." The defense then rested without offering any evidence. The parties were then afforded an opportunity to make closing arguments. The defense renewed its motion for judgment of acquittal. The trial court took the motion under advisement to give the State, at its request, an opportunity to file suggestions in opposition to the appellant's motion for judgment of acquittal.

On September 26, 2000, the court entered its findings of fact and conclusions of law overruling the appellant's motion for judgment of acquittal and finding him guilty as charged:

It is found and believed from the evidence beyond a reasonable doubt: First, that on or about February 5, 2000, in the County of Clay, State of Missouri, the defendant carried upon or about his person a .22 caliber pistol, and Second, that the defendant carried the pistol so that it was concealed from ordinary observation, and Third, that the pistol was readily capable of lethal use, and Fourth, that the unloaded pistol and ammunition for it were readily accessible, and Fifth, that the pistol was in a functioning state, and Sixth, that the defendant was not traveling in a continuous journey peaceably through the State of Missouri, and Seventh, that defendant acted knowingly with respect to the facts and conduct found in this paragraph. The defendant is found guilty of the unlawful use of a weapon as charged in the Indictment returned May 24, 2000.

On October 23, 2000, the appellant filed his motion for judgment of acquittal or in the alternative for a new trial, alleging the same grounds as alleged in his motions for judgment of acquittal at the close of the State's and all the evidence. The motion was heard and overruled on October 27, 2000. On December 14, 2000, the appellant was given a two-year suspended sentence in the Missouri Department of Corrections and placed on probation for five years.

This appeal follows.

## Standard of Review [3]

■ In a jury-tried case, our review of a trial court's ruling on a motion for judgment of acquittal is for a submissible case. *State v. Sensabaugh,* 9 S.W.3d 677, 679 (Mo.App.1999). However, in a judge-tried case, as here, where the trier of fact and the arbiter of the law are one in the same, we review to determine whether there was sufficient evidence from which the trial court could have found the defendant guilty beyond a reasonable doubt. *State v. Rehberg,* 919 S.W.2d 543, 552 (Mo. App.1995). "In making that determination, we accept as true all evidence tending to prove guilt together with all reasonable inferences that support the finding, and all contrary evidence and inferences are ignored." *Id.* (citation omitted). "We do not weigh the evidence or decide the credibility of witnesses," but defer to the trial court. *Id.* (*citing State v. Silvey,* 894 S.W.2d 662, 672 (Mo. banc 1995)).

### I.

In Point I, the appellant claims that the trial court erred in overruling his motions for judgment of acquittal at the close of the State's and all the evidence because, having injected at trial the special negative defense referred to as the "travelers' exemption," as provided in § 571.030.3, the State was required, but failed, to prove beyond a reasonable doubt that the exemption did not apply. In support of his claim, the appellant contends that the evidence was insufficient for the trial court to have found that his intrastate journey from Richmond to Excelsior Springs was not continuous and peaceable for purposes of § 571.030.3, such that the travelers' exemption applied, requiring his acquittal.

The State contends that the evidence was sufficient for the trial court to have found that the appellant's trip was neither continuous nor peaceable, and, as such, the travelers' exemption did not apply. Because we find that the travelers' exemption was not properly injected at trial, the State, in order to convict, was not required to show that the exemption did not apply such that we never reach the issue raised by the appellant in this point, whether the State carried its burden in showing that the exemption did not apply.

■ The appellant was charged with unlawful use of a weapon, under § 571.030.1(1), which provides that a "person commits the crime of unlawful use of weapons if he or she knowingly carries concealed upon or about his or her person a knife, a firearm, a blackjack or any other weapon readily capable of lethal use[.]" The State alleged in the information charging the appellant, that on or about February 5, 2000, he "knowingly carried concealed upon or about his person a firearm, to-wit: a .22 caliber pistol, which weapon was readily capable of lethal use." Thus, in order to convict the appellant of the offense of unlawful use of a weapon as charged, the State, as a matter of due process, had the burden of proving beyond a reasonable doubt that the appellant "carried a firearm upon or about his person and that he knowingly carried it so that it was concealed from ordinary observation." *State v. Henderson,* 826 S.W.2d 371, 377 (Mo.App.1992); *see also State v. Purlee,* 839 S.W.2d 584, 590 (Mo. banc 1992).

■ Several special negative defenses to the offense of carrying a concealed weapon, as charged under § 571.030.1, are provided in § 571.030.3. One such defense

---

**3.** In violation of Rule 84.04(e), the appellant does not provide a standard of review in his argument of either point relied on. Nonetheless, we will review, *ex gratia,* the merits of his claims, while admonishing appellant's counsel to be more diligent in satisfying the requirements of Rule 84.04 in future briefs filed in this court.

is commonly referred to as the "travelers' exemption," which provides that the offense of unlawful use of a weapon, as charged under § 571.030.1(1), "does not apply when the actor is ... traveling in a continuous journey peaceably through this state." § 571.030.3. A special negative defense is a defense:

> (1) upon which the defendant does not carry the burden of proof, (2) supported by enough evidence arising during the whole case to raise a reasonable doubt of defendant's guilt, and (3) which presents a positive fact or set of circumstances, as distinguished from a bare denial or converse, which, if found, would negate one or more essential elements of an offense, or which would, if found, constitute a legal defense.

*State v. Nutt*, 703 S.W.2d 583, 584 (Mo. App.1986). The State bears the burden of disproving a special negative defense, but only if the appellant first produces evidence sufficient to inject the defense at trial. *State v. Wilkerson*, 796 S.W.2d 388, 392–93 (Mo.App.1990).

■■■ The travelers' exemption has been a part of our law since 1874. *Id.* at 392. It "enables travelers to protect themselves 'against perils which typically do not face them back home among their neighbors.' " *State v. Murray*, 925 S.W.2d 492, 493 (Mo.App.1996) (*quoting State v. Collins*, 879 S.W.2d 585, 586 (Mo.App. 1994); *King v. State*, 839 S.W.2d 709, 711 (Mo.App.1992)). The travelers' exemption has been found to apply to both intrastate and interstate travel. *State v. Mason*, 571 S.W.2d 246, 248 (Mo. banc 1978). To inject the travelers' exemption at trial, the defendant is required to introduce evidence to show that he or she was not only traveling in a continuous journey through the state, but was doing so in a peaceable manner. *Collins*, 879 S.W.2d at 586. Once the defendant properly injects the

travelers' exemption, "the State has the further burden to prove that the defendant was not within the exemption." *Wilkerson*, 796 S.W.2d at 393 (citations omitted).

■■■ In its judgment entry, the trial court found that the appellant had properly injected the special negative defense of the travelers' exemption. Thus, in accordance with this finding, the State, in addition to its burden of proving the other elements of the offense of carrying a concealed weapon, was required by the trial court to prove beyond a reasonable doubt that the travelers' exemption did not apply, either by showing that the appellant was not on a continuous journey through the state at the time the weapon was seized, or that if he was, that he was not doing so peaceably. *Id.* Our review of the record, however, indicates that the exemption was never properly injected at trial such that the State should not have been required to prove its non-application to convict. Of course, in either situation, the exemption not being injected or not applying, this point would be resolved against the appellant in that we are to affirm the trial court if its ruling was correct on any basis supported by the record and the law. *State v. Hunt*, 630 S.W.2d 211, 213 (Mo. App.1982).

As we discussed, *supra*, to properly inject the travelers' exemption at trial, the defendant must first introduce evidence to show that he or she was traveling in a continuous journey in a peaceable manner. *Collins*, 879 S.W.2d at 586. The journey can be either intrastate or interstate. *Mason*, 571 S.W.2d at 248. A careful reading of the record here indicates that there was no evidence that the appellant was stopped during an intrastate or interstate journey. In that regard, the appellant did not testify at trial. There is no evidence as to where he had traveled from or was traveling to. While there was evidence that he

resided in Richmond, it cannot be reasonably inferred from that fact that he had started there and was traveling to Excelsior Springs. As such, the travelers' exemption was never sufficiently injected at trial such that the State had no burden to prove that it did not apply, rendering irrelevant the issue raised in this point of whether the record was sufficient to support the trial court's finding that he was engaged in a continuous journey through the state in a peaceable manner.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred in overruling his motions for judgment of acquittal at the close of the State's and all the evidence because, the appellant's having injected at the trial the special negative defense referred to as the "non-lethal use exemption," as provided in § 571.030.3, the State was required, but failed, to prove beyond a reasonable doubt that the exemption did not apply. Specifically, he claims that the evidence was insufficient to prove beyond a reasonable doubt that: (1) the gun, when seized, was in a functioning state; and (2) the ammunition for it was readily accessible. The State contends that the evidence was sufficient for the trial court to find that the appellant's gun was functional and that the ammunition for it was readily accessible, such that the non-lethal use exemption did not apply. We agree.

▬▬▬ As noted, *supra*, the appellant was charged with the unlawful use of a weapon, under § 571.030.1(1), for knowingly carrying concealed upon or about his person a .22 caliber pistol, which was readily capable of lethal use. "The essential elements of the offense are the knowing concealment and accessibility of a functional lethal weapon." *Purlee*, 839 S.W.2d at 590. In addition to the travelers' exemption discussed, *supra*, § 571.030.3 also

provides for the special negative defense to the offense of carrying a concealed weapon, which is commonly known as the "non-lethal use exemption." This exemption reads:

Subdivisions (1), (5), (8) and (10) of subsection 1 of this section do not apply when the actor is transporting such weapons in a nonfunctioning state or in an unloaded state when ammunition is not readily accessible or when such weapons are not readily accessible.

§ 571.030.3. Giving the language used its plain and ordinary meaning, *State v. Harney*, 51 S.W.3d 519, 532 (Mo.App.2001), to properly inject this exemption at trial, the appellant was required to introduce evidence showing that either: (1) the weapon was in a nonfunctioning state; (2) the weapon was unloaded and ammunition was not readily accessible; or (3) the weapon was not readily accessible. *Purlee*, 839 S.W.2d at 591.

At trial, to inject the exemption, the appellant introduced evidence to show two of the three options for application of the exemption: (1) the gun was in a nonfunctioning state; and (2) it was unloaded and ammunition for it was not readily accessible. As to the weapon being nonfunctioning at the time of seizure, the defense introduced evidence to show that the breech of the gun was open and that it would not fire until the breech was closed. As to the ammunition for the weapon not being readily accessible, the defense introduced evidence to show that it was in a nylon pouch, which was found in the appellant's left inside coat pocket. The trial court found that this evidence was sufficient to inject the exemption at trial on either basis asserted by the appellant for its application such that the State had the burden to prove beyond a reasonable doubt that the exemption did not apply on either basis. In convicting the appellant, the trial court, as the fact finder, found that the State had carried its burden of

proof with respect to the exemption not applying finding that "the pistol was in a functioning state," and that "the unloaded pistol and the ammunition for it were readily accessible." The question, here, is whether the evidence was sufficient to support these findings of the trial court.

## A. Nonfunctioning State of the Gun

The appellant contended at trial, as he does on appeal, that his gun, when seized, was in a nonfunctioning state because the breech was open such that it could not be fired until the breech was closed. He did not and does not argue that the gun was broken.

■■■■■■ In contending as he does, the appellant misinterprets "nonfunctioning," for purposes of § 571.030.3. "Nonfunctioning" means that the weapon is not operational or is broken. *Purlee*, 839 S.W.2d at 590; *State v. Lutjen*, 661 S.W.2d 845, 848 (Mo.App.1983). Here, there is no evidence that the gun was broken. On the contrary, Officer Hurt testified that after returning to the police station, he loaded the appellant's gun using the ammunition seized and fired it without any problems. Thus, the record would support the fact that the gun was not broken. As such, given the definition of "nonfunctioning" and the evidence in the record, the exemption was never properly injected in the first instance on the basis that the appellant's gun was nonfunctioning such that the State should never have had the burden to prove the non-application of the exemption on that basis. In any event, it matters not in that the evidence was sufficient for the trial court to have found that the appellant's gun was functional, and that as such, the exemption did not apply on that basis.

## B. Readily Accessible Ammunition

There is no dispute in this case that the appellant's gun was unloaded at the time of its seizure. As such, to prove the non-application of the exemption, the State had to show that the ammunition for the appellant's gun was readily accessible. In that regard, the appellant contends that the ammunition was not readily accessible because it was in a nylon "camouflage pouch" found in his left inside pocket of the coat he was wearing. We disagree.

■■■■ In *Purlee*, the Supreme Court held that, for purposes of the exemption, ammunition is readily accessible when it is within "easy reach." 839 S.W.2d at 591. In *State v. Harp*, 680 S.W.2d 297, 300 (Mo.App.1984), the court held ammunition was within easy reach where the ammunition for the defendant's gun was in the pants' pocket of a *passenger*, the rationale being that the passenger could have easily taken the ammunition from his pocket and given it to the defendant. Common sense tells us that if ammunition is readily accessible where it can be found in another's possession, it is readily accessible if found on the person concealing the weapon, absent extraordinary circumstances, which do not exist here. Thus, there was sufficient evidence at trial for the court to have found that the exemption did not apply on the basis of the ammunition not being readily accessible.

Because the evidence was sufficient for the trial court to have found that the exemption did not apply on either basis asserted, the point is denied.

## Conclusion

The judgment of the circuit court convicting the appellant of unlawful use of a weapon, § 571.030.1(1), is affirmed.

SPINDEN, C.J., and TURNAGE, Sr.J., concur.