STATE of Missouri, Respondent,

v.

James M. LEWIS, Appellant.

No. WD 64378.

Missouri Court of Appeals,
Western District.

April 18, 2006.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Assistant Attorney General, Jefferson City, MO, for Respondent.

Louis J. Sill, Jr., Kansas City, MO, for Appellant.

Before EDWIN H. SMITH, C.J., and LOWENSTEIN and HOWARD, JJ.

EDWIN H. SMITH, Chief Judge.

James M. Lewis appeals the judgment of the Circuit Court of Jackson County, following a bench trial, finding him, in accordance with § 552.030,[1] not guilty, by reason of a mental disease or defect excluding responsibility (NGRI), of first-degree assault, in violation of § 565.050, and armed criminal action (ACA), in violation of § 571.015. As a result, the trial court, pursuant to § 552.040.2, ordered that the appellant be "committed to the Director of the Department of Mental Health (DMH), for custody, care and treatment in a secure State mental hospital as provided by law."

The appellant raises two points on appeal. In Point I, he claims that the trial court erred in overruling his motions for judgment of acquittal, at the close of the State's and all the evidence, because the State failed to prove, beyond a reasonable doubt, the requisite intent element of first-degree assault that the appellant, in stabbing the victim, acted knowingly. In Point II, he claims that the trial court erred in adjudicating, *sua sponte*, pursuant to § 552.030, that he was NGRI of the offenses charged, and in ordering that he be committed to the DMH "for custody, care and treatment in a secure state mental hospital," pursuant to § 552.040, because, pursuant to § 552.030.2, the court, as a matter of law, was not authorized to even consider the defense of NGRI in that the appellant never asserted the defense, as required by § 552.030.2, by entering a plea of NGRI or filing a written notice of his intent to rely on such defense.

We reverse and remand.

1. All statutory references are to RSMo, 2000, unless otherwise indicated.

## Facts

On March 20, 2001, at approximately 9:30 a.m., the appellant and Monte Peck, both of whom lived at the Ashley Park apartment complex at Manchester and 63rd Street in Kansas City, Missouri, were at a bus stop at 67th Street and Manchester. The victim, Terry Dixon, who was a groundskeeper at the apartment complex and knew both men, was out jogging and approached both men at the bus stop. The victim started joking around with the appellant, saying that he heard about the appellant and calling him a "player hater," which meant that the appellant was jealous of the victim. The appellant then started asking the victim what he heard about him, and the two started arguing.

While the appellant and the victim were arguing, the appellant ran up to the victim, and the men began to "scuffle." At some point, the appellant took out a knife with a four-inch blade and started stabbing the victim. Neither the victim nor Peck immediately realized that the victim had been stabbed. It was only when the victim had pulled away from the appellant and placed his hand on his neck that he saw blood and realized he had been stabbed. At that point, the victim fell to the ground, with the appellant yelling that the victim had been in his apartment, which the victim denied. The victim was able to get to his feet and went back to the apartment complex, where he got someone to call the police. In the meantime, the appellant remained at the bus stop with Peck. The appellant told Peck that he was relieved he had done what he did to the victim because someone had been entering his apartment and "messing with his stuff."

On April 13, 2001, the appellant was indicted in the Circuit Court of Jackson County for the class A felony of assault in the first degree, in violation of § 565.050, for attempting "to kill or cause serious physical injury to Terry Dixon by stabbing him, and in the course thereof inflicted serious physical injury on Terry Dixon." The appellant was also charged with ACA, in violation of § 571.015, for allegedly committing "the felony of Assault in the First Degree ... by, with and through the use, assistance and aid of a dangerous instrument." On May 10, 2001, the appellant was arraigned and pled "not guilty." On October 7, 2002, the appellant filed a "Notice of Intent to Rely, *Inter Alia*, on [the] Defense of Mental Disease or Defect Negating Culpable Mental State," pursuant to § 552.015.2(8).

Between November of 2002 and February of 2003, the appellant underwent two mental evaluations to determine whether he was competent to stand trial and whether he was criminally responsible for stabbing the victim, both of which concluded that he suffered from a mental disease or defect which prevented him from knowing and appreciating the nature, quality, or wrongfulness of his conduct at the time of the alleged crime. On the issue of competency to stand trial, one examiner concluded that he was competent, while the other found that he was not. Both examiners diagnosed the appellant with schizoaffective disorder, bipolar type. On March 14, 2003, the appellant was declared competent to stand trial, based upon the stipulations of the parties.

The appellant's case proceeded to a one-day bench trial before the Honorable Ann Mesle on May 21, 2004. In its opening statement, the State asked the court to "find [the appellant] not guilty by reason of insanity." Immediately after its opening statement, the State offered the appellant's medical records for admission, including his two mental evaluations. The appellant did not object.

At the close of the State's evidence, the appellant moved for judgment of acquittal,

alleging that the State had failed to prove the requisite intent element of first-degree assault, which was overruled. At the close of all the evidence, the appellant renewed his motion, which was also overruled. The trial court proceeded to enter its judgment finding him not guilty of the charged offenses by reason of mental disease or defect excluding responsibility, in accordance with § 552.030.

Prior to entering its judgment, finding that the appellant was not guilty of the charged offenses by reason of mental disease or defect excluding responsibility, pursuant to § 552.030, the appellant was questioned at length by his trial counsel, the prosecution, and ultimately the court, to clarify the defenses on which he was relying and what that meant as far as the possible outcomes of his case. In addition to relying on the affirmative defense of self-defense, the appellant made it clear that he was not relying on the affirmative defense of NGRI, but instead, was relying on the defense that he was suffering from a mental disease or defect negating culpable mental state. He further made it clear that in relying on those defenses alone, he understood that that meant the trial court could only find him not guilty or guilty. During that exchange, it was made painfully obvious that the only reason the appellant was asking the trial court to consider the evidence of his mental disease or defect was with respect to his defense of negating the requisite culpable mental state, as provided in § 552.015.2(8). This appeal follows.

### Standard of Review

■ Our standard of review in a judge-tried criminal case is set forth in *State v. Carroll*, 41 S.W.3d 878, 880 (Mo. banc 2001): "Rule 27.01(b) provides that the findings of the trial court shall have the force and effect of a jury. Therefore, appellate review is as though a jury has returned a verdict of guilty. If there is substantial evidence to support the findings of the trial court, its judgment is to be affirmed." In determining the sufficiency of the evidence in a judge-tried criminal case, "the Court accepts as true all evidence in the record tending to prove the defendant's guilt together with inferences favorable to the state that can be reasonably drawn therefrom. The Court disregards all contrary evidence and inferences." *Id.*

### I.

■ Because Point II is dispositive of this appeal, we address it alone. In Point II, the appellant claims that the trial court erred in adjudicating, *sua sponte,* pursuant to § 552.030, that he was NGRI of the offenses charged, and in ordering, pursuant to § 552.040, that he be committed to the DMH "for custody, care and treatment in a secure state mental hospital," because, pursuant to § 552.030.2, the court, as a matter of law, was not authorized to even consider the NGRI defense. Specifically, he claims that the trial court was not authorized to consider the NGRI defense in his case in that he never asserted the defense, as required by § 552.030.2, by entering of plea of NGRI or filing a timely written notice of his intent to rely on such defense. We agree.

■ Given the issue presented in this point, we necessarily are called upon to interpret § 552.030. "Statutory interpretation is an issue of law which this court reviews *de novo.*" *State ex rel. Nixon v. Premium Standard Farms, Inc.,* 100 S.W.3d 157, 161 (Mo.App.2003). In interpreting a statute, we are to ascertain the intent of the legislature from the language used and give effect to that intent, if possible. *Id.* In ascertaining the intent of the legislature, we are to give the language

used its plain and ordinary meaning. *State v. Brushwood*, 171 S.W.3d 143, 147 (Mo.App.2005). "To determine whether a statute is clear and unambiguous, this court looks to whether the language is plain and clear to a person of ordinary intelligence." *Premium Standard Farms*, 100 S.W.3d at 161.

> Where the legislative intent is made evident by giving the language employed in the statute its plain and ordinary meaning, we are without authority to read into the statute an intent, which is contrary thereto. When the legislative intent cannot be ascertained from the language of the statute, by giving it its plain and ordinary meaning, the statute is considered ambiguous and only then can the rules of statutory construction be applied.

*Brushwood*, 171 S.W.3d at 147 (citations omitted).

■■■ Section 552.030.1 provides: "A person is not responsible for criminal conduct if, at the time of such conduct, as a result of mental disease or defect such person was incapable of knowing and appreciating the nature, quality, or wrongfulness of such person's conduct." However, § 552.030.6 establishes a rebuttable presumption that a criminal defendant is "free of mental disease or defect excluding responsibility." This presumption is conclusive, unless "substantial evidence of lack of such responsibility" is introduced. *Id.* Both the burden of injecting the issue and the burden of persuasion thereon are on the defendant. *Id.;* MAI–CR 3d 306.2A, Note on Use 2. Hence, the NGRI defense, as provided in § 552.030.1, is an affirmative defense that must be initiated and proven by the defendant. *State v. Kee*, 510 S.W.2d 477, 480 (Mo. *banc* 1974); MAI–CR 3d 306.2A, Note on Use 2. Section 552.030.2 mandates:

> Evidence of mental disease or defect excluding responsibility *shall not be admissible* at trial of the accused unless the accused, at the time of entering such accused's plea to the charge, pleads not guilty by reason of mental disease or defect excluding responsibility, or unless within ten days after a plea of not guilty, or at such later date as the court may for good cause permit, the accused files a written notice of such accused's purpose to rely on such defense.

(Emphasis added.) Thus, to inject the issue of the NGRI defense in the case, the statute requires the defendant to either plead NGRI, at the time of arraignment, or file a written notice of his intent to rely on the defense within ten days of pleading not guilty, or a later date for good cause shown.

In *State ex rel. Proctor v. Bryson*, 100 S.W.3d 775, 777 (Mo. *banc* 2003), the Missouri Supreme Court was faced with the issue of whether the trial court could order a psychiatric examination, pursuant to § 552.020, to determine the defendant's mental capacity at the time of the alleged criminal conduct, where she had not asserted the defense of NGRI. The Court held that:

> Neither section 552.020.2 nor 552.020.4 allows the court, or the State, to assert a defense of mental disease or defect on behalf of the defendant. When the defendant does not on her own accord assert the mental disease or defect defense, the court has no authority to require her to submit to an examination relating to her mental state at the time of the alleged crime.

*Proctor*, 100 S.W.3d at 778. Logically, this same reasoning would apply with respect to § 552.030. Thus, because there is nothing in § 552.030 that would allow the trial court or the State to assert a defense of NGRI on behalf of the defendant, if the defendant has not injected the defense in

the case, as provided in § 552.030.2, neither the State nor the trial court can inject or assert it for him. In placing the burden on the defendant to inject the issue of the NGRI defense in the case, the legislature's intent is clear—the issue of the NGRI defense is not in the case for consideration by the trial court, unless and until it is properly injected in the case, in accordance with § 552.030.2. As such, unless the affirmative defense of NGRI is injected by the defendant, in accordance with § 552.030.2, the trial court has no authority to acquit him of the crime charged on that ground, as provided in § 552.030.7, and commit him to the custody of the DMH, as provided in § 552.040.

Here, it is undisputed that the appellant did not inject or assert the NGRI defense in his judge-tried case, as provided in § 552.030.2. While he did introduce evidence of mental disease or defect, he did so for the express and sole purpose of negating the existence of the required culpable mental states of the crimes charged. In that regard, on October 7, 2002, he filed what he denominated: "Notice of Intent to Rely, *inter alia*, on Defense of Mental Disease or Defect Negating Culpable Mental State; See MAI–CR: 308.03." The notice reads, in pertinent part:

> COMES NOW the defendant ... and ... gives notice of his intent to rely, *inter alia*, on the defense of [defendant] not having the required mental state for the alleged criminal conduct as a result of mental disease or defect, pursuant to RSMo Section 552.015.8 [*sic* ] and MAI–CR: 308.03.

(Emphasis added.)

■■■■ Section 552.015.1 expressly prohibits the admission of evidence of the defendant's mental disease or defect in a criminal proceeding, except in the circumstances enumerated in that section. One such exception, the one cited by the appel-

lant in his written notice of October 7, 2002, is found in § 552.015.2(8), which allows the admission of such evidence "[t]o prove that the defendant did or did not have a state of mind which is an element of the defense." As stated in Note on Use 3 of MAI–CR 3d 308.03, the patterned instruction for "Mental Disease or Defect Negating Culpable Mental State":

> The use of evidence of mental disease or defect negating the existence of a required culpable mental state *is not the same as the affirmative defense of lack of responsibility by reason of mental disease or defect.* (See MAI–CR 3d 306.02.) Evidence of mental disease or defect negating a culpable mental state is simply evidence that the defendant did not have the culpable mental state that is an essential element of the crime.

(Emphasis added.) While the NGRI defense is an affirmative defense, placing the burden of injecting the issue and proving it on the defendant, *Kee,* 510 S.W.2d at 480; MAI–CR 3d 306.2A, Note on Use 2, evidence of mental disease or defect, negating the existence of the required mental state, is, by definition, a special negative defense in that while the defendant has the burden to inject the issue, the "burden is on the state to prove the existence of the culpable mental state beyond a reasonable doubt." MAI–CR 3d 308.03, Note on Use 3.

> A special negative defense is a defense: (1) upon which the defendant does not carry the burden of proof, (2) supported by enough evidence arising during the whole case to raise a reasonable doubt of defendant's guilt, and (3) which presents a positive fact or set of circumstances, as distinguished from a bare denial or converse, which, if found, would negate one or more essential elements of an offense, or which would, if found, constitute a legal defense.

*State v. Davis,* 71 S.W.3d 659, 665 (Mo. App.2002). In other words, with respect to a special negative defense, the defendant has the burden of injecting the issue, but the State has the burden of disproving that issue once properly injected. *Id.*

Section 552.015.2(2) also allows the admission of evidence of mental disease or defect of the defendant: "To determine whether the defendant is criminally responsible as provided in section 552.030[.]" However, as we discuss, *supra,* the admission of such evidence for that purpose is conditioned on the defendant properly injecting the NGRI affirmative defense in the case, as provided in § 552.030.2. And, because that did not occur here, the evidence of mental disease or defect of the appellant in this case was admissible only on the issue of whether he had the requisite culpable mental states for the crimes charged, as provided in § 552.015.2(8), on which the State had the burden of proof. In that regard, it should be noted: "In order to use evidence of mental disease or defect to negate a required culpable mental state, it is not necessary that the defendant assert the affirmative defense of lack of responsibility by reason of mental disease or defect." MAI–CR 3d 308.03, Note on Use 3. Thus, it cannot be argued fairly that the introduction of evidence of mental disease or defect automatically invokes both defenses, the proposition the trial court was apparently relying on when it ruled that the appellant was NGRI as to the charged offense, even though he never asserted that affirmative defense at trial and repeatedly advised the court that he did not want to rely on that defense.

The State contends that the affirmative defense of NGRI was properly in the case because of the language of § 552.030.6 that: "The issue of whether any person had a mental disease or defect excluding responsibility for such person's conduct is one for the trier of fact to decide upon the introduction of substantial evidence of lack of such responsibility." The State argues that this language means that the affirmative defense of NGRI is properly injected in the case whenever substantial evidence exists that the appellant is suffering from a mental disease or defect excluding responsibility. In contending as it does, the State is obviously reading the relied-upon language of the statute out of context and is totally ignoring the clear language of § 552.030.1, which we discuss, *supra.* This it cannot do. "Statutory provisions relating to the same subject matter are considered *in pari materia.*" *Preston v. State,* 33 S.W.3d 574, 579 (Mo.App.2000).

The language of § 552.030.6 relied upon by the State follows immediately the presumption language of that subsection, that a defendant is "presumed to be free of mental disease or defect excluding responsibility for [his] conduct." § 552.030.6. Hence, the language relied upon by the State has to be read in the context of the presumption, meaning that it only pertains to the rebuttal of the presumption created by § 552.030.6. The State totally ignores the prohibition of § 552.030.2, prohibiting the introduction of evidence to establish the NGRI defense, unless and until the issue is injected by the defendant in the case. And, while the State is correct that the appellant did not object to the admission of evidence of his suffering from a mental disease or defect, the record is crystal clear on the fact that he would have had no reason to object to such evidence in that it bore directly on the issue of his written declaration of his intent to rely at trial on the defense of mental disease or defect negating the existence of the required culpable mental states of the offenses charged, which is totally separate and distinct from the affirmative defense

of NGRI. And, as we noted, *supra*, inasmuch as it is not necessary that the defendant assert the affirmative defense of NGRI, in order to use evidence of mental disease or defect to negate a required culpable mental state, MAI–CR 3d 308.03, Note on Use 3, it cannot be argued that the introduction of mental disease or defect evidence invokes both defenses.

Because it is clear from the record that the appellant never asserted the affirmative defense of NGRI, the trial court misapplied § 552.030.2 by considering and finding that the appellant was not guilty of the offenses charged by reason of mental disease or defect excluding responsibility. As such, we must reverse its judgment.

In the event we reversed the trial court's judgment, the State asks us to remand "for entry of conviction and sentencing for first-degree assault and armed criminal action." The State's request is based on double jeopardy not attaching and the trial court, in entering its NGRI judgment, "necessarily [having] found all elements required for conviction [of the charged offenses]." While it is true that double jeopardy would not attach, *see State v. Kent*, 515 S.W.2d 457, 460–61 (Mo. *banc* 1974) (holding that a verdict of not guilty by reason of mental disease or defect which is later found to be invalid does not place the defendant in jeopardy of being found guilty), the record makes it clear that the trial court did not find for the State on each of the proof elements required for convicting the appellant on the charged offenses. Hence, we cannot grant the State's request.

Both offenses, assault in the first degree and ACA, required the State, in order to convict, to prove, beyond a reasonable doubt, the requisite *mens rea*, *see State v. Kelly*, 43 S.W.3d 343, 350 (Mo.App.2001) (holding that the State has the burden of proving each and every element of each

criminal offense charged), which is "knowingly" for assault, § 565.050.1, and "knowingly" for ACA, *see State v. Williams*, 126 S.W.3d 377, 382 (Mo. *banc* 2004) (holding that because the definition of ACA does not expressly state a culpable mental state and a culpable mental state is required, ACA requires a culpable mental state of acting "purposely" or "knowingly"). As we discuss, *supra*, at trial, as to these proof elements, the appellant defended on the basis that by reason of mental disease or defect he did not have the requisite mental states for conviction of the crimes charged. *See* MAI–CR 3d 308.03, Note on Use 3. Hence, if the trial court considered this defense and found for the appellant, it would have been cause to find him not guilty, as charged.

There is nothing in the record to suggest that, in misapplying § 552.030.2 and finding that the appellant was NGRI as to the charged offenses, the trial court considered the appellant's special negative defense of mental disease or defect negating the requisite mental states for conviction. In fact, just the opposite appears to be true. It would appear from the record that the trial court, with respect to the evidence of mental disease or defect, was focused solely on the requirements of the affirmative defense of NGRI and neither considered nor found whether the State had carried its burden of proof to show that the appellant had the requisite *mens rea*, as to the offenses charged, to convict him thereof in light of the appellant's assertion of the special negative defense and the evidence of mental disease or defect, which evidence the court obviously recognized in adjudicating that the appellant was NGRI.

Because the record does not support the fact that the trial court, in adjudicating that the appellant was NGRI as to the charged offenses, necessarily found all the

requisite proof elements of those offenses, we reject the State's request to instruct the court, on remand, to enter its judgment of convictions. However, we see no need in ordering a new trial. This is a judge-tried case. The trial court heard all the evidence in the case, but unfortunately never deliberated on the issues that were properly presented, specifically, the appellant's defense negating the requisite culpable mental state. As such, to correct the trial error, as found by this court, the trial court need only consider, on remand, the evidence in the case and determine whether the State carried its burden of proof as to each and every element of the offenses charged, specifically, the *mens rea* elements, as to which the appellant has raised the special negative defense of mental disease or defect negating culpable mental state, and enter its judgment accordingly.

We need not discuss Point I in that it deals with the sufficiency of the State's evidence to disprove the appellant's special negative defense that he was suffering from a mental disease or defect negating the requisite culpable mental states of the offenses charged, the issue which we have determined in Point II the trial court failed to consider and decide. Thus, depending on the trial court's disposition of this issue on remand, the issue raised in Point I may or may not arise, requiring our review. As such, we need not review it inasmuch as it is, for the time being, moot.

## Conclusion

The judgment of the circuit court, finding the appellant not guilty of the charged offenses by reason of mental disease or defect excluding responsibility, in accordance with § 552.030, and committing him, pursuant to § 552.040, to the custody of the DMH for custody, care and treatment, is reversed, and the cause is remanded to

the court for further proceedings in accordance with this opinion.

LOWENSTEIN and HOWARD, JJ., concur.